UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN PARALYZED
VETERANS OF AMERICA, et al.,

    Plaintiffs,                      CIVIL ACTION NO. 15-cv-13046

    v.                              DISTRICT JUDGE PAUL D. BORMAN

MICHIGAN DEPARTMENT        MAGISTRATE JUDGE MONA K. MAJZOUB
OF TRANSPORTATION, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT [55] AND DENYING PLAINTIFFS' MOTION TO FILE NOTICE WITH, AND TO CERTIFY TO, THE UNITED STATES ATTORNEY GENERAL [56]

This matter comes before the Court on Plaintiffs Michigan Paralyzed Veterans of America (MPVA), Ann Arbor Center for Independent Living, Inc. (AACIL), Maurice L. Jordan, Michael Harris, Carolyn Grawi, James R. Briggs, Claire Abraham, Lloyd Shelton, National Federation of the Blind of Michigan, Angie Carlson, Linda Evans, Zach Damon, Jason Decamillis, A.S., a minor, through his next friend, Amy Sheperd, Larry Keeler, and LuAnne Bullington's Motion for Leave to File Third Amended Complaint, Under Federal Rule of Civil Procedure 15(a)(2). (Docket no. 55.) Defendants Pittsfield Charter Township, Washtenaw County Road Commission (WCRC), Michigan Department of Transportation (MDOT), and Ypsilanti Charter Township, respectively, responded to Plaintiffs' Motion (docket nos. 61, 63, 66, 67), and Plaintiffs replied to Defendants WCRC and MDOT's Responses (docket nos. 69, 70). Also before the Court is Plaintiffs' Motion to File Notice With, and to Certify to, the United

States Attorney General Pursuant to Federal Rule of Civil Procedure 5.1(a)(1)(A) and (a)(2), and under 28 U.S.C. § 2403(a). (Docket no. 56.) Defendants filed Responses to Plaintiffs' Motion (docket nos. 62, 64, 65, 68), to which Plaintiffs replied (docket no. 71.) The Motions have been referred to the undersigned for consideration. (Docket no. 75.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

## I. BACKGROUND

Plaintiffs initiated this action against Defendants on August 27, 2015, pursuant to Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973, alleging that Washtenaw County's public right-of-way is not fully accessible to pedestrians with disabilities as required by law. (Docket no. 1.) On September 11, 2015, before any Defendant had filed a responsive pleading, Plaintiffs filed an Amended Complaint, to which each Defendant filed an answer. (Docket nos. 3, 10, 15, 17, 18.) Plaintiffs then filed a Motion for Leave to File a Second Amended Complaint on January 29, 2016. (Docket no. 22.) The Court granted Plaintiffs' Motion on September 22, 2016, and Plaintiffs filed the Second Amended Complaint the next day. (Docket nos. 43, 46.) In response to the Second Amended Complaint, Defendants WCRC and MDOT filed motions to dismiss, and Defendants Pittsfield Charter Township and Ypsilanti Charter Township filed answers. (Docket nos. 47, 50-52.) Plaintiffs now move to amend the complaint for a third time. (Docket no. 55.) Additionally, Plaintiffs assert that Defendant MDOT challenged the constitutionality of Title II of the ADA and Section 504 of the Rehabilitation Act in its motion to dismiss (docket no. 52), and they therefore move the court under Federal Rule of Civil Procedure 5.1(a) to (1) order Defendant MDOT to notify the United States Attorney General of the constitutional challenge; and (2) to certify the constitutional

challenge to the United States Attorney General in accordance with 28 U.S.C. § 2403. (Docket no. 56.)

## II. PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT [55]

Plaintiffs move for leave to file a third amended complaint to (1) "correct any possible pleading defects" in the Second Amended Complaint potentially raised by Defendants MDOT and WCRC's interpretation of the Sixth Circuit's opinion in *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016); (2) to name as a defendant MDOT Director, Kirk T. Steudle, in his official capacity for prospective injunctive relief pursuant to the *Ex parte Young* doctrine; (3) to allege that many Plaintiffs find the May 1, 2016 expanded portions of Washtenaw County's public transit service to be inaccessible due to Defendants MDOT and WCRC's construction of inaccessible bus stops, sidewalks, and street crossings; and (4) to redact the name of the minor Plaintiff in this matter to reflect only his initials. (Docket no. 55 at 4-6.)

Federal Rule of Civil Procedure 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Factors relevant to the determination of whether to permit an amendment include "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th

3

Cir. 2001). "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." *U.S. v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) (citation omitted). "Delay alone . . . does not justify the denial of leave to amend. Rather, the party opposing a motion to amend must make some significant showing of prejudice to prevail." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assoc., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). The decision whether to grant a motion to amend is within the sound discretion of the court. *Perkins*, 246 F.3d at 605.

Plaintiffs argue that justice and judicial economy would be served by granting the instant motion to amend because Defendants MDOT and WCRC's motions to dismiss the Second Amended Complaint are based on a decision that was issued while their Motion for Leave to File a Second Amended Complaint was pending. (Docket no. 55 at 2, 4, 9, 14-15.) This decision, *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), concerned claims brought under Title II of the ADA and Section 504 of the Rehabilitation Act of 1973, the same statutes under which Plaintiffs bring their claims in the instant matter. Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In *Babcock*, the court distinguished "between services, programs, or activities and the facilities in which they are administered," and it held that "facility accessibility is not, standing alone, a cognizable claim under Title II's private right of action; rather, the inquiry is tied to whether that facility's inaccessibility interferes with access to public services, programs, or activities." 812 F.3d at 535, 536.

Plaintiffs assert that the proposed amendments cure any deficiencies of the Second Amended Complaint raised by Defendants WCRC and MDOT's application of *Babcock* to this case and that the efficient administration of justice requires that they be allowed to file those amendments. (Docket no. 55 at 13-15.) Plaintiffs also assert that their motion is timely because at the time of filing, the Court had recently granted them leave to file the Second Amended Complaint; the motion hearing on Defendant WCRC and MDOT's pending motions to dismiss was approximately 100 days off; and the discovery and dispositive motion deadlines set in the Joint Discovery Plan were about two and four months away, respectively. (*Id.* at 1-2.) Plaintiffs further assert that Defendants will not be severely prejudiced if leave to amend is granted because the proposed amendment keeps all the same parties and the same causes of action. (*Id.* at 9.)

Defendant Pittsfield Charter Township opposes Plaintiffs' Motion on the basis that the *Babcock* decision was issued while Plaintiffs' Motion for Leave to File a Second Amended Complaint was pending,[1] and nothing prevented Plaintiffs from revising their proposed second amended complaint to address the issues raised by *Babcock* at that time. (Docket no. 61 at 7.) Defendant Pittsfield Charter Township further argues that it has already expended a lot of time and money responding to Plaintiffs' First Amended Complaint and Second Amended Complaint, and justice requires that Plaintiffs' Motion be denied and that Pittsfield Charter Township not be obligated to incur additional expense in responding to Plaintiffs' Third Amended Complaint. (*Id.* at 7-8.)

Defendant Ypsilanti Charter Township concurs and incorporates into its response brief the facts and arguments set forth in Defendant Pittsfield Charter Township's response brief.

---

[1] Indeed, *Babcock* was decided and filed one week after Plaintiffs filed their Motion for Leave to File a Second Amended Complaint.

(Docket no. 67 at 10 n.2.) It adds that Defendants should not be forced to pay for Plaintiffs' delay and inability to properly plead their cause of action. (*Id*. at 12.) Defendant Ypsilanti Charter Township further argues that Plaintiffs have failed to establish that the amendment is necessary because, to the extent that Plaintiffs seek to address the issues raised in the *Babcock* decision, those issues can be raised in responsive pleadings to Defendants MDOT and WCRC's motions to dismiss. (*Id*.)

Defendant WCRC responds that Plaintiffs' Motion should be denied because the proposed amendments are futile, as they do not obviate the grounds for dismissal articulated in WCRC's motion to dismiss, which are: (1) "that Plaintiffs have failed to allege an injury in fact resulting from lack of meaningful access to a service, program, or activity of Defendant [WCRC];" and (2) "that sidewalks, street level transit stops, and other pedestrian walkways are not 'facilities' or 'services'" of Defendant [WCRC]." (Docket no. 63-1 at 7.) Defendant WCRC also argues that Plaintiffs' attempt to amend their complaint to show that they are really suing over exclusion from public services, programs, or activities in accordance with *Babcock* is misguided, over reaching, and general. (*Id*. at 8-9.) Defendant WCRC adds that none of the services, programs, or activities enumerated by Plaintiffs in the proposed third amended complaint is a service, program, or activity of Defendant WCRC. (*Id*. at 9.)

Defendant MDOT filed a response similar to that of Defendant WCRC. (Docket no. 66.) In its response, Defendant MDOT characterizes the instant Motion as Plaintiffs' "futile effort to fix their repeated failure to cure deficiencies by previous amendments." (*Id*. at 7 (citation omitted).) Defendant MDOT then argues that *Babcock* is not a sufficient justification for Plaintiffs' failure to amend earlier, because *Babcock's* holding that only services, programs, and activities are protected by Title II of the ADA has been part of the statute since its inception, and

6

*Babcock* therefore did not change the essential elements of a Title II claim. (*Id*. at 8-10.) Defendant MDOT also argues that Plaintiffs' proposed third amended complaint is futile because the laundry list of allegedly inaccessible buildings and services that Plaintiffs propose to add to their complaint includes no factual basis to support Plaintiffs' conclusory allegations of inaccessibility. (*Id*. at 10-11.) Defendant MDOT further argues that it is not responsible for the maintenance or operation of any of the cited services, programs, or activities. (*Id*.)

Defendants essentially argue that Plaintiffs have caused undue delay in this matter because they should have supplemented their Motion for Leave to File a Second Amended Complaint to address the issues presented in *Babcock* as soon as or shortly after the decision was filed rather than filing the instant Motion months later. While Plaintiffs could have supplemented their previous motion to amend, the Court is not convinced that Plaintiffs necessarily should have done so and/or that their failure to do so is grounds for denying the instant Motion. This is because *Babcock* is distinguishable from the instant matter in several respects. Most notably, *Babcock* concerned claims of inaccessibility to an existing building, not sidewalks like the instant case. As Judge Rogers stated in his concurring opinion,

> Our decision today thus does not necessarily control a future case involving sidewalks. There is some room for the possibility that sidewalks may qualify as services even if the design features of a building do not. A city's sidewalks are more critical to the everyday transportation needs of the general public than are the design features of a specific building. The conclusion that sidewalks may qualify as a service is supported by a 2004 decision from this court, a Title II implementing regulation, and the Justice Department's amicus briefs in several sidewalk cases. Our judgment today does not resolve the question.

*Babcock*, 812 F.3d at 543 (Rogers, J., concurring). Thus, it was not unreasonable for Plaintiffs to not address *Babcock* until Defendants WCRC and MDOT relied upon it in their motions to dismiss. Accordingly, the Court finds the instant Motion to be timely, as it was filed within three weeks of Defendants' motions to dismiss.

7

The Court recognizes that Defendants have expended a great deal of time and money in filing responsive pleadings to Plaintiffs' Amended Complaint and Second Amended Complaint. Nevertheless, to the extent that Plaintiffs' failure to plead interference with access to the public services, programs, and activities located within the facilities listed in paragraph 19 of the proposed third amended complaint could be fatal to Plaintiffs' case under *Babcock*, the interests of justice in allowing Plaintiffs to amend their complaint outweighs the prejudice of the additional time and expense that Defendants will incur in responding to a third amended complaint.[2] Additionally, at the time the Motion was filed, this matter was still in its early stages, i.e., discovery remained open, and no trial date had been set by the court.

Defendants WCRC and MDOT argue that Plaintiffs' proposed amendment is futile because Plaintiffs' allegations that they were denied access to certain public services, programs, and activities are general, conclusory, and meaningless. (Docket no. 63-1 at 8-9; docket no. 66 at 10-11.) Defendants' argument lacks merit. Under the notice pleading standard, Plaintiffs need not plead detailed factual allegations; instead, they must provide "'a short and plain statement of the claim' to 'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). Plaintiffs have done so in this regard.

Defendants WCRC and MDOT also argue that Plaintiffs' proposed amendment is futile because the services, programs, and activities to which Plaintiffs have allegedly been denied access are not services, programs, or activities of Defendants, and Plaintiffs have failed to allege that Defendants are responsible for those services, programs, or activities. (Docket no. 63-1 at 9;

---

[2] While the undersigned finds that Defendants will suffer minimal prejudice if Plaintiffs' Third Amended Complaint is allowed at this time, the prejudice factor will become increasingly significant in the Court's decision to allow any further amended complaints going forward.

docket no. 66 at 11.) Defendant MDOT continues that "[t]o state a viable Title II claim against MDOT based on inaccessible facilities, Plaintiffs must allege that those facilities precluded access from MDOT's 'services, activities, or programs.'" (Docket no 66 at 13.) But as Plaintiffs point out, neither Defendant WCRC nor MDOT have cited authority for this proposition. (Docket no. 69 at 3; docket no. 70 at 3.) Notably, District Judge David M. Lawson recently rejected this very same argument set forth by Defendants WCRC and MDOT in a similar case:

> The regulations plainly state that no disabled person shall be denied the benefits of the "services of ... a public entity" because "a public entity's facilities are inaccessible." Nowhere does the statute state that "a public entity" must be the same entity that both provides a service and creates or maintains the inaccessible facility that obstructs access to it. Nor can any such restriction sensibly be read into the law, since it is apparent that in many cases the agencies that construct and maintain government facilities and those that operate within or among those facilities will be entirely distinct. If mere bureaucratic segregation between individual government agencies that build and maintain facilities and those that operate within them is all that is required to escape the mandate of the ADA, then the result would be that many—perhaps most—public facilities actually in existence today would be entirely exempt from the Act's accessibility mandate. Such a tortured reading of Title II of the ADA would lead to an unwarranted—and absurd—result.

*Mote v. City of Chelsea*, No. 16-11546, 2017 WL 2215039, at *9 (E.D. Mich. May 19, 2017). This Court is aligned with Judge Lawson's opinion and likewise rejects Defendants' argument in this matter.

Finally, to the extent that Defendants MDOT and WCRC argue that the proposed amendments are futile for the same reasons advanced in their pending motions to dismiss, the Court finds that those arguments are best addressed in conjunction with their pending motions to dismiss, as they are not fully briefed in the pleadings responsive to the instant Motion. For the reasons stated above, the Court will grant Plaintiffs' Motion for Leave to File Third Amended Complaint.

## III. PLAINTIFFS' MOTION TO FILE NOTICE WITH, AND TO CERTIFY TO, THE UNITED STATES ATTORNEY GENERAL [56]

Plaintiffs assert that Defendant MDOT has raised a constitutional challenge to Title II of the ADA in its motion to dismiss, and they therefore seek a court order compelling Defendant MDOT to file notice of the challenge with, and they request the court to certify the matter to, the Attorney General of the United States in accordance with Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403(a).[3]  (Docket no. 56.)  Federal Rule of Civil Procedure 5.1 provides that if a party files a pleading, written motion, or other paper drawing into question the constitutionality of a federal statute, and the United States, one of its agencies, or one of its officers or employees in an official capacity is not included in the lawsuit, the party must promptly file a notice of constitutional question stating the question and identifying the paper that raises it, and it must serve the notice and paper upon the Attorney General of the United States.  Fed. R. Civ. P. 5.1(a).  Additionally, "[t]he court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned."  Fed. R. Civ. P. 5.1(b).  Under 28 U.S.C. § 2403, "[i]n any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality."  Upon receiving notice, "the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier."  Fed. R. Civ. P. 5.1(c).

---

[3] There is one instance in the instant Motion in which Plaintiffs imply that Defendant WCRC also raised a constitutional challenge in its motion to dismiss. (Docket no. 56 at 4.)  Plaintiffs, however, do not identify or cite to the alleged challenge raised by Defendant WCRC, and the Court finds none.

10

Here, Defendant MDOT moves to dismiss Plaintiffs' claims against it on the basis of Eleventh Amendment immunity. (Docket no. 52.) The Eleventh Amendment guarantees that nonconsenting States may not be sued by private individuals in federal court. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72–73 (2000)). Congress, however, "may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Id*. (quoting *Kimel*, 528 U.S., at 73). Congress has unequivocally expressed its intent to abrogate state sovereign immunity for violations of the ADA. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.")). "But the Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim." *Babcock*, 812 F.3d at 534 (citing cases). "To guide the lower courts in assessing whether the Eleventh Amendment proscribes an ADA Title II claim, the Supreme Court has set forth a three-part test:

> [D]etermine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."

*Id*. at 534-35 (quoting *Georgia,* 546 U.S. at 159; citing *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010)).

Plaintiffs argue that by invoking Eleventh Amendment immunity, Defendant MDOT is alleging that Congress has failed to properly abrogate state sovereign immunity as to the State of Michigan and its agencies, and Defendant MDOT is therefore challenging the constitutionality of

the application of Title II of the ADA to MDOT. (Docket no. 56 at 12-13.) Plaintiffs believe that this triggers the duties of Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403(a). (Docket no. 71 at 2.)

Defendant MDOT, recognizing that *Georgia* requires a case-by-case approach in addressing Eleventh Amendment immunity under Title II of the ADA, argues that Plaintiffs' Motion is premature at this juncture because Defendant MDOT's Eleventh Amendment argument hinges on the first prong of the *Georgia* test – that its conduct does not violate Title II of the ADA. (Docket no. 65 at 9.) Defendant MDOT continues that its motion is therefore, for all practical purposes, a standard Rule 12(b)(6) motion, which does not implicate the constitutionality of Congress's actions. (*Id.*) Defendant MDOT points out that the constitutionality of Title II only becomes relevant if the court concludes that Plaintiffs have stated a Title II claim against MDOT; otherwise, there is no need to address the second and third prongs of the *Georgia* test. (*Id.* at 9-10 (citing *Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 672 (6th Cir. 2007) ("[U]nder *Georgia,* the constitutional question-abrogation of Eleventh Amendment immunity-will be reached only after finding a viable claim under Title II.") and *Zibbell v Mich. Dep't of Human Servs.*, 313 F. App'x 843, 847 (6th Cir. 2009) (If a district court finds that a plaintiff fails to state an ADA claim, "it need not – and should not – . . . venture[] into the consideration of immunity under the Eleventh Amendment.")).) Defendant MDOT concludes that because its motion to dismiss is expressly limited to the first prong of *Georgia*, which has no bearing on Title II's constitutionality, and because the court can rule on its motion by analyzing only the first prong of *Georgia*, it need not involve the Attorney General at this time. (*Id.* at 10.)

The Court agrees with Defendant MDOT. The only issue substantively raised in Defendant MDOT's motion to dismiss is whether Plaintiffs have sufficiently stated a Title II claim against MDOT. Defendant MDOT does not yet assert that, and has not made any argument regarding whether, Congress's abrogation of the State of Michigan's Eleventh Amendment immunity under Title II of the ADA is invalid. Accordingly, the Court will deny Plaintiffs' Motion to File Notice With, and to Certify to, the United States Attorney General.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File Third Amended Complaint [55] is **GRANTED**. Plaintiffs will file the Third Amended Complaint with the court, as proposed, within fourteen (14) days of this Opinion and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File Notice With, and to Certify to, the United States Attorney General [56] is **DENIED**.

**NOTICE TO THE PARTIES**

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: May 25, 2017      s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: May 25, 2017      s/ Lisa C. Bartlett
Case Manager